PETITIONERS OF SCHOOL DISTRICT NO. 9, CADDO COUNTY, v. JONES, Dist. Judge, et al.

No. 31140. May 11, 1943.

Rehearing Denied June 8, 1943.

Application for Leave to File Second Petition for Rehearing Denied Sept. 14, 1943.

*140 P. 2d 922.*

Walter Morris, of Anadarko, and Tolbert, Tolbert & Gillespie, of Hobart, for petitioners.

Oris L. Barney, of Anadarko, for respondents.

ARNOLD, J. This is an original application for a writ of certiorari for the purpose of reviewing the judgment of the district court rendered in the matter of the proposed annexation of certain territory from school district No. 9, Caddo county, Okla., to district No. J-3, Caddo county, Okla., cause No. 13088, in the district court of Caddo county, Okla.

The annexation was effected under 70 O. S. 1941 §§ 890.1 and 890.2. This was an act relating to the formation and alteration of school districts and regu-

lating annexations of territory to existing school districts and prescribing procedure therefor. A petition for annexation was filed with the county superintendent, and after giving notice, as provided by law, a hearing was had and the county superintendent of public instruction entered the order of annexation. Thereafter an appeal was perfected to the district court of Caddo county, where, after hearing, the court entered the same order of annexation. Under the provisions of section 890.1, supra, the judgment of the district court was final, there being no provision for appeal.

The petitioners filed this application for a writ of certiorari, contending that the respondents, the district judge, and the county superintendent of public instruction of Caddo county, were without jurisdiction of the subject matter; that where no appeal or proceeding lies, this court has the power to issue a writ of certiorari to bring up the record of an inferior court or tribunal for review of jurisdictional errors.

Under the rule in this jurisdiction a writ of certiorari brings up for review the sole question of whether 'the inferior court kept within, or exceeded, the jurisdiction conferred upon it by law. It cannot be used to correct errors committed by such court within the limits of its jurisdiction. See Harris et al. v. District Court in and for Nowata County, 68 Okla. 231, 173 P. 69; House et al. v. Musick, County Superintendent of Public Instruction, 185 Okla. 264, 91 P. 2d 676.

It is apparent that the sole question for determination in this case is whether the respondents exceeded the jurisdiction conferred by section 890.1 and 890.2, supra.

Section 890.1, supra, provides that:

"All, or part, or several parts, of any school district of any kind, class, or type shall be annexed to and become a part of any adjacent school district . . . upon petition to the county superintendent of public instruction, signed by a majority of the qualified electors of each district, or part of district, seeking to be annexed and by a majority of the members of the school district board of the district to which said territory is sought to be annexed."

Section 890.2, supra, provides:

"That the county superintendent shall order said annexation if he finds that the provisions of this act have been substantially complied with."

The obvious purpose of the Legislature was to provide procedure by which all, or part, of a school district could be annexed to an adjacent school district if the majority of the electors in such district or part thereof, and a majority of the members of the school board of the annexing district, determined so to do, and the annexation would not be violative of its intention that a school district should never be composed of nonadjacent integral parts. The county superintendent and the district court, on appeal, are given no discretion.

In determining whether or not the Legislature ever intended that a school district should be composed of separate, distinct, and nonadjacent units or tracts of land, a brief chronological historical review of preceding legislation on the subject will be helpful. In our original act providing for the formation and change of school districts the Legislature said:

"It shall be the duty of the county superintendent of public instruction to divide the county into a convenient number of school districts and to change such districts when the interests of the people may require it, *by making them conform to existing topographical or physical conditions; . . .*"

Our independent school district act provides that:

"Each city of the first class, and each incorporated town maintaining a four year high school fully accredited with the State University, shall constitute an independent district, . . ."

And with reference to the annexation of territory outside the limits of any city or town within an independent district the act provided: "and the taxable property of such *adjacent* territory

shall be subject to taxation, and shall bear its full proportion of all expenses incurred in the erection of school buildings and in maintaining the schools of such city; . . ."

With reference to consolidated districts, our Legislature provided:

"A special meeting of the voters of any two or more *adjacent* school districts or parts of districts or territory, may be called for the purpose of establishing a consolidated school, . . ."

With reference to newly formed consolidated districts composed of territory in more than one county, the Legislature provided that the school building site should be designated "as near the center of population of such consolidated district as practicable."

With reference to the formation of union graded schools, the Legislature provided for a special school meeting of the qualified voters "of two or more *adjacent* school districts."

The Legislature authorized the uniting of independent districts in the following language:

"Two or more *adjacent* independent school districts may be united for school purposes when it is desired to unite in order to maintain a stronger school system than either of the districts can maintain alone, which shall be known as a united district."

In making provision for the disorganization of independent school districts and providing for annexation of territory thereof the Legislature said:

"Any independent school district may become disorganized for the purpose of annexing the territory therein contained to *another adjacent* independent school district by petition signed by a two-thirds majority of the electors in the district seeking to disorganize."

The original union graded school general act was amended by the Legislature in 1939; therein the Legislature used the expression:

"A special meeting of the qualified voters, of two or more *adjacent* school districts, for the purpose of voting on the proposition of forming a union graded school district . . ."

Therein it also said:

"Any two districts maintaining schools for children of the same race, which are separated only by intervening territory in which the district school is maintained for children of the other race, shall be deemed to be *adjacent* for the purposes of this section."

Provision was made in the 1941 Act for the attachment of an entire common school district to a union graded, consolidated, or independent school district providing transportation for pupils in anticipation of inundation by the erection of a proposed dam to the extent of at least 50% of the district to be attached. It will be noted that the Legislature made the following significant provision therein:

"*It shall not be necessary* for such common school district to be *adjacent or contiguous* to the consolidated district or independent or union graded district to which such common school district is annexed."

It is obvious from a casual reading of all the statutes enacted by our Legislature that it had the common concept of a school district, that is, that a school district constitutes a compact unit or single territory. As has been pointed out, there are only two instances wherein we find an indication, or even an intimation, that the Legislature ever intended or anticipated that a school district should be composed of nonadjacent units of territory. It is apparent that the Legislature in those two instances had in mind the special circumstances existing, and thought that such circumstances indicated the necessity of provision for an exception to its intended plan that school districts should never be composed of nonadjacent units of land.

The word "district" comports a unit, area, tract, parcel.

25 O. S. 1941 § 1 provides:

"Words used in any statute are to be understood in their ordinary sense, except when a contrary intention plainly appears, . . ."

It is common knowledge that school districts, judicial districts, legislative districts, incorporated towns, cities, and counties are composed of one body of land. In the face of all the indications to the contrary, we cannot attribute to the Legislature any intention on its part that a school district should ever be composed of nonadjacent units or integral parts where it made no specific provision therefor. Likewise, it never intended that an existing school district should be divided into separate and distinct noncontiguous parts by the annexation of a portion, or portions, thereof to another district. You cannot accomplish indirectly that which cannot be effected directly.

The first prerequisite of the 1941 Act is that annexation shall be to an adjacent school district.

"Adjacent does not always imply actual contact, but it does not admit of anything of the same kind between; thus, adjacent lots are in contact, but adjacent houses may or may not be." See Webster's Dictionary of Synonyms.

The clear purpose underlying such act is that a school district and all parts thereof shall be contiguous. In our opinion, this was unquestionably the intention of the Legislature.

In the instant case the territory sought to be annexed in part is contiguous to the annexing school district. However, such attempted annexation cuts off and isolates a portion of the school district from which it was taken. In other words, it leaves school district No. 9 in two parts, separated by a strip of land a mile wide. This strip is a part of the territory involved in the annexation proceedings. Although the act does not specifically set forth that this cannot be done, an attachment of territory which leaves another school district composed of nonadjacent units or tracts of land violates the clear intention of the Legislature. Without a clearly expressed intention to the contrary, we cannot presume the Legislature intended to violate or abrogate its clearly expressed intention throughout the course of its legislation on the subject. Approval of such annexation would be to permit the doing indirectly of that which the act, in making provision for annexation to a nonadjacent school district. We are of the opinion, and therefore hold, that territory cannot be detached from one school district in such a manner as to divide such school district into two noncontiguous tracts, even though adjacent in part, to the school district with which annexed.

The respondents tacitly admit that our view as to the construction of the statute involved is correct, but contend that in case No. 12999 the district court of Caddo county reversed the order of the county superintendent of public instruction and ordered the territory, which would be separated from the balance of school district No. J-3, annexed to said school district No. 9; that said district court was without jurisdiction in that case for the reason that school district No. J-3 was an independent school district and the school board of such district did not give its consent to the detachment as required by 70 O. S. 1941 § 890.4; that, therefore, the order of annexation was a nullity and void because beyond the court's jurisdiction and the annexation order involved in this case does not divide school district No. 9 in two separate tracts and same is a valid annexation.

In our opinion this contention is untenable. It was neither made nor argued at the hearing of this case in the district court. The order of annexation was entered by the district court without regard to the validity or invalidity of the order of annexation in cause No. 12999. The court merely determined that the provisions of the act had been substantially complied with and ordered the annexation.

The question of whether the district court exceeded its jurisdiction in making the order of annexation in cause No. 12999 cannot be raised for the first time in the response to the application for a writ of certiorari. The proceedings on the return are confined solely to the record of the lower court or tribunal.

See Southern National Bank v. Wallace, 63 Okla. 206, 164 P. 461; Lennon v. School District No. 11, 189 Okla. 37, 113 P. 2d 382. For the purpose of this case we must assume, since the record does not show otherwise, that the order in cause No. 12999 constituted a valid annexation. Whether the district court exceeded its jurisdiction therein, of course, can and must be tested in a proper case for that purpose.

Having determined that the district court exceeded its jurisdiction, the order of annexation is void and same should be and is vacated.

GIBSON, V. C. J., and RILEY, OSBORN, and HURST, JJ., concur. CORN, C. J., and BAYLESS, WELCH, and DAVISON, JJ., dissent.