CRUZAN et al. v. KIRK et al.

No. 32703.   May 6, 1947.

Rehearing Denied June 24, 1947.

*181 P. 2d 842.*

46

Walter Mathews, of Cushing, for plaintiffs in error.

Chilton Swank, County Atty., and Swank & Swank, all of Stillwater, for defendants in error.

BAYLESS, J. This is an appeal from the district court of Payne county by Mamie A. Cruzan et al., who complain of an order of said court directing the county superintendent of public instruction to make an order annexing school district No. 47 to Deep Rock consolidated school district No. 7.

The facts are as follows:

There are 65 legal voters in school district No. 47. The petition requesting annexation was signed by 46 of said voters. An election was held after giving due notice, resulting in 23 votes being cast favoring annexation and 17 opposing. The matter was appealed to the district court and the order complained of was entered.

Appellants contend that under the provisions of chapter 24, S.L. 1943, p. 208 et seq., title 70, §891.1 et seq., 1945 Supplement to O.S. 1941, an affirmative vote of a majority of all the legal voters of the district is required to authorize the annexation. The question involved is, Is a majority of the legal voters of the district required or is a majority vote of those who voted sufficient?

The pertinent parts of said act are as follows:

"Sec. 1. Subject to the limitations and conditions hereinafter set forth, all of any school district . . . shall be annexed to . . . any adjacent school district . . . *at an election if a majority of the legal voters of the district affected shall approve such action.*"

"Sec. 3. Within ten (10) days following the receipt of a petition *signed by fifty (50%) per cent of the legal voters of the district* . . . the County Superintendent shall post notices . . . in the school district . . . which is proposed to be annexed. . . ."

"Sec. 5. . . . In the event the question of the annexation shall receive *a majority vote* the County Superintendent shall further state in said notices that unless an appeal is taken within ten (10) days from the date of posting of the notices that he will make an order carrying into effect the annexation. . . ."

"Sec. 10. Provided further that fifty (50%) per cent of the voters in any territory that has been annexed to another district during the years 1941, 1942, and 1943, may file a petition with the county superintendent of the county of the district from which they were originally detached calling for an election for the purpose of detachment, . . . and *if a majority of those voting* at such an election shall vote to detach from the district of which they were then a part and return to the district from which they were detached, the county superintendent of the county shall declare the territory annexed to the original district." (Emphasis ours.)

The courts have generally sustained elections in which a majority vote was received of those who voted, although a majority vote of all the qualified electors was not obtained.

A reason given in many cases is that the practical difficulties in determining the exact number of electors at a given time supports the inference that it was not the intent of the constitutional or statutory provisions so to require. The following quotation from Foy v. Gardiner Water Dist., 98 Me. 82, 56 A. 201, is typical of this line of authority:

". . . the actual number must be ascertained in each case by witnesses,

entailing a long and difficult hearing, before the vote can be declared and its result known. When and by whom can it be had? Such hearing is utterly impracticable. A construction leading to such result should not be adopted nor such intention imputed to the Legislature unless demanded by express, imperative, and unmistakable language. The expression in the act is not of that character."

This court, in line with the majority rule, has held that, unless the law clearly declares otherwise, all qualified voters who absent themselves from an election duly called are presumed to assent to the expressed will of those voting. See Annotation, 131 A.L.R., 1382, and Munce v. O'Hara, 340 Pa. 209, 16 A. 2d 532, 131 A.L.R. 1379.

In Goodwin et al. v. Union Graded School District No. 4, Caddo County, et al., 181 Okla. 382, 74 P. 2d 601, we construed section 6948, O.S. 1931, which reads:

"No part of the statute of Oklahoma shall be construed so as to prevent the location of the site for a schoolhouse in the union graded school districts by a majority of the electors of said union graded school district"

—to mean a majority of those electors who voted at the election and not a majority of the electors of the school district. We stated in the opinion, at page 602:

"The contention of the appellants is contrary to the general rule on the precise point. 9 R.C.L. 1116, paragraph 117, states the rule correctly, . . ."

An examination of the act in question reveals that the legislative intent is not entirely clear. Section 1 provides "A majority of the legal voters of the district."

Section 5 states: "In the event the question . . . shall receive a majority vote." Sec. 10 provides that "a majority of those voting" may cause a district to be detached. Considering the act as a whole, there is no reason to assume the Legislature intended to make it easier to detach than to annex a school district. We hold it was the legislative intent that both in annexing and detaching a majority vote of those who voted would be sufficient.

Judgment affirmed.

HURST, C.J., DAVISON, V.C.J., and RILEY, OSBORN, GIBSON, and ARNOLD, JJ., concur.