**LITTLEFIELD et al. v. HOWERY et al.**
No. 35769.

Supreme Court of Oklahoma.
Feb. 16, 1954.

J. D. Truett, Windham & Windham, Poteau, for plaintiffs in error.

Joseph W. Foster, Alpheus Varner, Poteau, for defendants in error.

BLACKBIRD, Justice.

The present case involves an appeal from an order dated June 14, 1952, of the County Superintendent of Schools of LeFlore County, Oklahoma, annexing dependent School District No. 47, to Independent School District No. 7, in said County. The order was entered in accord with the results of an annexation election the Superintendent had held four days previously, pursuant to a petition for such annexation filed in his office on May 27, 1952, and the notice or "call" he issued four days later.

958

Plaintiffs in error, to whom we shall hereinafter refer as "Protestants", thereafter commenced the present action in the District Court as an appeal from said County Superintendent's Annexation Order. Despite the presence of other allegations contained in protestant's pleadings the primary issue they sought to have determined in the court hearing was whether or not the annexation order was void, as being without jurisdiction of the County Superintendent to enter it, because the petition, pursuant to which the annexation election was called, lacked sufficient signatures. It seems to have been agreed that such sufficiency in the present case is settled by the proper interpretation of Title 70 O.S.1951 § 7–1(a), which reads in part as follows:

"The territory comprising all or part of a school district may be annexed to an adjacent school district, or to a school district in the same transportation area authorized to furnish transportation, or to two (2) or more such districts, when approved at an annexation election called and conducted by the County Superintendent of Schools in pursuance of a petition for annexation signed by a majority of the *school district electors* in the territory proposed to be annexed, * * *." (Emphasis added.)

To facilitate a proper interpretation of what are "school district electors" within the meaning of that term as used in the quoted statute, a stipulation of facts was entered into showing that there were 69 persons residing in Independent School District No. 47, (the one annexed) qualified as electors, if no discrimination as to race be made. The petition was signed by only 31 of these. To describe the situation in another way, the number of signatures on the petition represented a majority of the white electors in the district, but, if Negro residents (admittedly qualified as electors in other respects than race) are considered, then it lacked signatures of a majority of the district's electors. Instead of deciding the question of whether Negroes or persons of African blood or descent are qualified "school district electors", the District Court,

after hearing the testimony of only one witness, J. M. Littlefield, sustained the demurrer to the evidence and objection to the introduction of any further evidence interposed by the defendants, who appear herein as defendants in error, but will hereinafter be referred to as "Proponents" of the annexation order. The trial court based his judgment, which had the effect of sustaining the Superintendent's annexation order, solely and specifically upon the second paragraph of the syllabus of our opinion in the case of Barnett v. Allen, 205 Okl. 469, 238 P.2d 811, 812, which is as follows:

"Where a petition requesting the calling of a school district election to determine a question which is clearly stated in the petition and no protest or objection is made to its sufficiency a finding by the county superintendent that it is sufficient to authorize the calling of the election is conclusive as against objection first made after the result of the election is determined."

In the present appeal from said judgment, protestants take the position that the trial court erroneously allowed the above quoted syllabus to govern his decision. They assert that the sufficiency of the petition for annexation is a jurisdictional matter, and, if insufficient (at least for the reason that it lacks sufficient signatures), it is void on its face and does not invoke the statutory power of the County Superintendent to call the election, and therefore any election had pursuant thereto, and the Superintendent's order effectuating the election result, are nullities and void. As to the latter proposition, there can be no doubt. See, for instance, McCoy v. Hall, 191 Okl. 311, 131 P.2d 60; School Dist. No. 84 v. Asher School Dist. No. 111, 168 Okl. 282, 32 P.2d 897; School Dist. No. 65 of Payne Co. v. Board of Comm'rs of Payne County, 148 Okl 5, 296 P. 483; School Dist. 9 of Tulsa Co. v. Board of Comm'rs, 138 Okl. 254, 280 P. 807; Board of Education v. Consolidated School Dist. No. 72, 113 Okl. 216, 340 P. 623.

After examining the evidence, particularly the testimony of Mr. Littlefield,

unequivocally showing that he protested, prior to the election, the County Superintendent's calling of it on the ground that the petition therefor lacked sufficient signatures by qualified electors, we have concluded that the rule laid down in Barnett v. Allen, supra, does not apply to this case, and that the trial judge erred in predicating his judgment thereon. However, this conclusion does not mean that the judgment must be reversed, because if it is correct, it will stand regardless of the erroneous reason given therefor. Mahan v. Dunkleman, 205 Okl. 54, 234 P.2d 366; Van Hoozer v. Best, 204 Okl. 149, 227 P.2d 1019; Peterson v. Roberts, 186 Okl. 496, 100 P.2d 431.

█ It thus appears necessary to decide the primary question which the parties sought to have determined in the trial court, namely: Are Negroes "school district electors" within the meaning of that term as it appears in the above quoted statute? The only authorities cited by the Proponents of the order for a negative answer to this question are Ratliff v. State, 79 Okl. 152, 191 P. 1038, and Musick v. School Dist. No. 41, 186 Okl. 371, 98 P.2d 590. In the first of these cases it was held:

"In an election for consolidating certain school districts into a consolidated district to be used for the benefit of the white children, the negro voters were not qualified electors to participate in said election *by reason of section 7899, Revised Laws of 1910.*" (Emphasis added.)

In urging application to the present case of the same statutory rule applied in the above cases on the same premise pointed out therein that Negroes are not interested parties in a school election pertaining only to schools for whites, Proponents call our attention to the facts stipulated herein that there has been no separate school for Negroes in District No. 47 ("the Braden District" involved) for at least 10 years and that the Negro children residing therein have been attending school at the adjoining nearby district of Spiro and Ft. Coffee. Proponents' argument is not convincing in view of the fact that its only statutory basis, i. e., *Sec. 7899, supra, was specifically repealed subsequent to the Musick case by the Eighteenth Legislature's enactment of House Bill 572, Title 75, Chap. 4a, Laws 1941.* This Court called attention to such repeal in the recent case of Dominic v. Davis, Okl.Sup., 262 P.2d 143. Protestants point out that neither in Article III, § 1, of the Oklahoma Constitution, which specifies the qualifications of the electors of this State, nor in any other constitutional provision, is any distinction made between the qualifications for electors at a school district election and the qualifications of electors at any other public election; and that Article XV, § 1, of the United States Constitution specifically provides that the rights of citizens of the United States to vote "shall not be denied * * * by any State on account of race, color, or previous condition of servitude." To this we might add that neither does Title 70 O.S.1951 § 1–15, which specifically prescribes the qualifications of a school district elector, make any such distinction.

█ Since, as hereinbefore shown, when the qualified Negroes are included with the qualified whites (in accord with the above conclusion) the total number of school district electors in the district involved is 69, and the petition signed by only 31 of these, admittedly lacks the "majority" required by statute, it was insufficient to confer jurisdiction upon the County Superintendent to call the election and make the annexation order. The trial court should have set aside the order. As that was not done, said court's judgment is reversed and remanded with directions to vacate it and enter a new judgment in lieu thereof, setting aside the County Superintendent's order as null and void.

. HALLEY, C. J., JOHNSON, V. C. J., and CORN, DAVISON, ARNOLD and WILLIAMS, JJ., concur.